## RODENHAUSEN *v.* KEYSTONE WAGON CO.[1]

*(Circuit Court, E. D. Pennsylvania. April 29, 1892.)*

PATENTS FOR INVENTIONS—CONSTRUCTION OF CLAIM—NOVELTY.

Letters patent No. 211,052, for a dumping-wagon, are to be construed as for a dumping-wagon wherein the body is raised front and rear simultaneously, by folding arms connected with the body and running gear, and suitable connections between the forward ends of the arms and wagon body, whereby, as the latter is raised, it moves rearwardly also with a single power device operating upon one or more of its arms, whereby a single continuous operation will elevate both ends of the body, and move it rearwards, and embrace patentable novelty.

Bill in Equity by Leonhard Rodenhausen to restrain the Keystone Wagon Company from infringing letters patent No. 211,052, for dumping-wagons. Decree for complainant.

[1]Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

*Jerome Carty* and *Ernest Howard Hunter*, for complainant.
*E. Clinton Rhodes*, for respondent.

BUTLER, District Judge. The suit is for infringement of letters patent No. 211,052, granted to L. Rodenhausen for "improvement in dumping-wagons." The answer attacks the patent—for want of patentable novelty—and also denies infringement. The specifications state that the invention consists "in connecting the body of the wagon to the reaches, truck, or running gear thereof by means of folding or radius arms, to either of which power may be applied in order to raise the body—the elevation of the body being simultaneous front and rear—by the power exerted on one of the arms, which are preferably in pairs," and describes the means whereby this is accomplished, more specifically and particularly by the drawings filed, and the following reference to them:

"A represents the body of the wagon, and B the running gear. C C' represents the arms, which are pivoted to the body A and reaches *a* or axles *b;* and to either of said arms is connected mechanism for causing them to move from a horizontal to a vertical position. In the present case I employ a cord or chain, *d,* which is wound on a proper drum and connected to one limb of the rear lever C', which is triangular in form for purposes of strength; but other mechanical means may be employed—such, for instance, as a pinion secured to the axis of one of the arms, and a rack fitted to the sill and reaching meshing with said pinion, or a screw connected to an arm and a suitable portion of the body or running gear. When the body is in its normal position it rests on the sills or truck, the arms occupying horizontal or somewhat horizontal positions, as shown in figure 1."

There is but one claim, which reads as follows:

"Folding arms connected to the body and running gear, substantially as described, whereby the front and rear of the body will be simultaneously raised as stated."

The concluding words—referring to certain functions of the invention—neither limit nor otherwise affect the scope of the claim, and may be treated as surplusage. Both the claim and specifications are unskillfully drawn. There is, however, no serious difficulty in so construing them as to cover the invention; and this appears so distinctly from the drawings and specifications as to be unmistakable. It is an improved dumping-wagon, wherein the body is raised front and rear simultaneously, by folding arms connected with the body and running gear, and suitable connections between the forward end of the folding arms and wagon body, whereby, as the latter is raised, it moves rearwardly also, and insures proper inclination for discharging its load by gravity; with a single power device operating upon one or more of the arms, whereby one continuous operation of the same will elevate both ends of the body and move it rearward.

Does this invention show patentable novelty? The former state of the art is so well summarized by the complainant's expert, Mr. Hunter, that we adopt his statement:

The old dumping-cart, as well known, consisted of a body on two wheels and pivoted on the axle so as to tilt and discharge its contents on the ground. The next step in the improvement in the dumping-wagon is that shown in the Iske patent, marked defendant's 'Exhibit P,' in which we have the old dumping-cart extended to the front and supported upon a frame, and second pair of wheels making a four-wheeled cart. Owing to the greater load which would be in advance of the pivot point, power devices were arranged at the forward end for raising this part of the wagon body. The extreme rear end of the wagon body was necessarily lowered, and the coal, which was discharged by gravity, was guided to the place of reception by a chute. We next come to the modification of this wagon of Iske's, as disclosed in the patent of Bullock & Hanigan of 1876, and marked defendant's 'Exhibit H.' In this case we have the same general features of the Iske dumping-wagon, but with this difference: The wagon body is permitted to move rearwardly upon the running gear before being tilted, and instead of being tilted close to the rear end, and at a point above the rear axle, the tilting is made to take place to the rear of the rear axle and at or about the center of gravity of the wagon body. The rear end of the wagon body, however, in the Bullock & Hanigan device, still descended to a lower elevation than the running gear reaches, but, as a greater length of the wagon body was brought to the rear of the pivot connection, the said wagon body was first raised at both ends simultaneously, and to an equal extent, before the tilting operation is permitted. When the tilting operation ultimately takes place, the discharge end of the wagon body in the Bullock & Hanigan patent is on substantially the same level as the discharge end of the Iske wagon, neither of which have their discharge ends raised as high as the normal elevation of that end when the wagon body was resting upon the running gear. It is to be observed that, aside from the automatic arrangement for dumping and returning the wagon body to the running gear in the Bullock & Hanigan patent, we have the bottom of the wagon body somewhat inclined to, in a measure, reduce the necessary obliquity required in the dumping operation. We next come to the further development of the art as disclosed in the Bailey patent of 1878, and marked defendant's 'Exhibit G,' in which we have the inclined wagon body of Bullock & Hanigan, combined with an elevating device such as shown at the forward end of the Iske wagon, at both the front and rear ends, so that the wagon body may be elevated, first at one end and then at the other, by *two separate power devices* operated successively or at different times. In the construction shown in this Bailey 1878 patent, the rear end was elevated first in the curved guides H, and then the forward end was elevated by a second power device to increase the obliquity of the floor of the wagon body to cause the coal to be discharged by gravity. While the Bailey wagon of 1878 overcame in a measure the defects of the wagons of the Bullock & Hanigan patents and Iske patent, in that it elevated the entire wagon body and coal to a higher elevation at all points than its normal position when resting upon the running gear, and at the same time imparting to the floor of the wagon body the necessary inclination so that the coal may be discharged to a greater distance in the chute, yet in accomplishing this improvement over the Bullock & Hanigan patent construction the said Bailey device lost the advantage, which consisted in moving the wagon body rearwardly, and also in that it required two devices instead of a single one to manipulate the body."

In this state of the art, Mr. Rodenhausen produced the improved dumping-wagon above described. That it was new and required the exercise of invention in a patentable sense, we cannot doubt. It possessed great advantages over all wagons previously constructed for the same purpose, and for more than a dozen years the patentee manufac-

tured and sold it extensively, without his right to the monopoly being questioned. The respondent's subsequent act, in taking the Klees patent—in part, at least, for substantially the same thing—is a virtual concession of this right.

Does the respondent infringe? This point, as well as the one just considered, was earnestly and ably contested by the respondent's counsel; but here again our judgment is against him. A minute analysis and comparison of the two wagons is unnecessary. With the models and drawings before us, and all the aid afforded by the respondent's expert, we are not able to find any substantial difference between them. In each the bed is raised, front and rear, and shifted backwards, at the proper angle, simultaneously, by one operation of devices and combinations, so similar in principle and effect as to be substantially undistinguishable. It is just possible the respondent has in some respects improved on the complainant's wagon. If he has, however, this does not excuse his infringement. A decree must be entered accordingly.